ESTATE of Albert E. MacCROWE, Deceased, James C. L. Anderson, Administrator de bonis non, with the will annexed, and Hazel B. MacCrowe (Now Hazel B. Keen), Surviving Wife, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 7792.

United States Court of Appeals Fourth Circuit.

Argued Jan. 22, 1959.

Decided March 9, 1959.

D. Sylvan Friedman, Baltimore, Md., for petitioners.

Joseph Kovner, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Attorney, Department of Justice, Washington, D. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PER CURIAM.

For the third time this case is before us on petition to review a decision of the Tax Court. The litigation arises out of the Commissioner's reconstruction of the gross income for the years 1948 and 1949 of Dr. Albert E. MacCrowe, now deceased, and the consequent deficiency assessments. The petitioners are the Estate of Dr. MacCrowe and, since joint returns were filed, Hazel B. MacCrowe (now Hazel B. Keen), surviving wife.

The decedent kept no records but estimated that in 1948 he treated 400 patients at $125 per patient, and the joint tax return filed by him and his wife ac-

cordingly showed estimated receipts in that year of $50,000 from his practice as a physician. The 1949 return estimated receipts of $24,000.

Initially the case was tried before Judge Johnson, of the Tax Court, who filed his findings and memorandum opinion in August, 1955, T.C.Memo. 1955–238, 24 T.C. 1168. From these it appears that Dr. MacCrowe, a physician, was primarily engaged in performing abortions during 1948 and 1949; that in 1948 he conducted his activities in two private homes, having a total of 19 to 21 beds available for patients; and that in 1949 a third home with 7 or 8 beds was also used.

The parties stipulated that in 1948 the decedent purchased 480 "HMC No. 1" tablets (each tablet contains one-quarter grain of morphine) and 240 such tablets in 1949. The Commissioner determined that the number of tablets purchased equalled the number of operations performed. Upon this evidence and upon an estimated average fee of $400 (instead of $125) per patient, the Commissioner had adjusted the decedent's gross receipts for 1948 to $192,000 (480 x $400); for 1949, to $96,000 (240 x $400).

Two former employees of the decedent, a woman in whose house many of the patients were treated, and her son, the decedent's chauffeur and messenger, later testified in the Tax Court that the decedent performed 30 to 36 operations a week for 40 weeks in 1948 and half as many in 1949, and that the operations yielded an average fee of $400 per case. Judge Johnson noted that this testimony, if accepted, would result in an estimated gross income for 1948 of nearly $500,000 and half as much in 1949. These figures the Judge termed "almost incredible." A certified public accountant, produced by the petitioners, testified that the decedent's net worth in the years in question was in keeping with his reported income. Judge Johnson held that "petitioners have shown respondent's [Commissioner's] determination to be incorrect." Nevertheless, "from the evidence" the Judge was satisfied that the decedent

failed to report all of his income from his medical activities and redetermined the gross income at $115,000 in 1948 and $55,000 in 1949, instead of the $50,000 and $24,000 for the respective years reported by the taxpayer, or the $192,000 and $96,000 determined by the Commissioner.

On review, this Court declared:

"The Commissioner arrived at these figures by estimating the number of patients operated on by the physician on the basis of morphine tablets purchased by him and multiplying this by a charge of $400 per patient. The Tax Court found that the Commissioner's determination was incorrect; but, while finding generally that taxpayer's gross income was $115,000 for 1948 and $55,000 for 1949, did not find the facts upon which this ultimate finding as to gross income was based." 4 Cir., 1956, 240 F.2d 841, 842.

We vacated the judgment and remanded the case, with directions to the Tax Court to find the facts upon which it based its gross income determination and with leave to hear additional evidence.

As Judge Johnson had by this time retired from the Tax Court, the case was reassigned to another Judge, who filed a memorandum opinion in June, 1957, T.C.Memo. 1957–103, based solely upon the record in the first proceeding, the parties having elected to introduce no new evidence.

When this decision was brought here for review, we said:

"He [the Judge] evidently misinterpreted our opinion as calling for findings in support of the prior determination and proceeded to make one additional finding as to the number of morphine tablets purchased by the physician and as to the physician's care in not losing any of them. We find, however, the same defect in the determination of gross income from medical practice as when the case was originally before us. The income as determined by the Com-

missioner on the basis of morphine tablets purchased and $400 charge per patient is still $192,000 for 1948 and $96,000 for 1949: neither of these amounts is accepted by the Tax Court; any presumption as to the correctness of the Commissioner's determination is accordingly out of the case; and the Tax Court has made no findings whatever upon which its determination of gross income of $115,000 and $55,000 from medical practice can be supported, nor does it give any reason for the figures at which it arrives.

"Under the circumstances there is nothing to do but remand the case again to the Tax Court to find the facts, with full power to go into the case de novo and make findings, either on the evidence already taken or on further evidence, without feeling bound in any way by the determination heretofore made. Judgments in tax cases, as in other cases, must have a reasonable basis on facts duly found by the court; and we cannot regard the method based on morphine tablets purchased by a physician as furnishing an adequate basis for assessment of his income tax, especially when this method is rejected by the Tax Court itself. Such evidence is, of course, competent as evidence of circumstances to be considered along with other evidence in the case in arriving at income." 4 Cir., 1958, 252 F.2d 293, 294.

After this second remand, the parties did not avail themselves of the opportunity given them by the presiding Judge to adduce additional evidence, but submitted the case upon the record previously made. The petitioners emphasized their attempt at the earlier hearing to establish by revenue agent Cassler that the Commissioner's determination of the number of operations was based solely upon the number of morphine tablets purchased. The Tax Court's opinion pointed out that the evidence failed to show that Cassler knew how the Commissioner had made his determination. The Commissioner, relying on the legal presumption in favor of his computation and on the prior evidence offered no further testimony by anyone as to how he did in fact reach his estimate. The Tax Court's opinion repeats the finding about the number of tablets but adds certain findings from the evidence of the witnesses who did not appear in person and who had been at least partly disbelieved by Judge Johnson, the only Judge who was afforded an opportunity to see them and appraise their credibility.

This leaves the case in a very unsatisfactory state. For this we do not criticize the Judge who presided over the proceedings now under review. As the parties were given the opportunity to produce witnesses but declined to do so, the Judge had only the record testimony. It is also possible that our mandate did not clearly indicate the procedure to be followed on the remand. However this may be, the difficulty is not diminished by these circumstances. Regrettable as is the necessity, we cannot avoid remanding the case for a hearing de novo. Since the gross income is to be determined, not solely upon a count of morphine tablets purchased, but also upon a more reliable basis of credible testimony, the question of credibility—the heart of the case—should be decided upon the trial court's observation of the witnesses. No mechanical application of the rule as to presumption of correctness will suffice in the existing circumstances. In light of the history of this case we think nothing less will satisfy the demands of justice.

Vacated and remanded.